IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ANTONEISHA WALKER, a minor through her mother and next friend, KELLY WILKERSON, <br><br> Plaintiff, <br><br> v. <br><br> HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207, MAUREEN SCHNAPER, EHREN JARRETT, & RANDY GROSS, <br><br> Defendants. | Hon. Judge Frederick J. Kapala <br><br> Hon. Mag. Judge P. Michael Mahoney <br><br> Jury Trial Demanded |

## COMPLAINT

The Plaintiff, ANTONEISHA WALKER, a minor through her mother and next friend, KELLY WILKERSON, by SOULE, BRADTKE & LAMBERT, complains against the above-named Defendants, HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207, MAUREEN SCHNAPER, EHREN JARRETT and RANDY GROSS:

### NATURE OF THE ACTION

1. Plaintiff brings claims against Defendants under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq. ("Title VI"); under 42 U.S.C. § 1983 to redress violations, by those acting under color of state law, of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbidding intentional race

discrimination; and under state common law for intentional infliction of emotional distress and willful and wanton supervision.[1]

2. Plaintiff further alleges that Defendants have engaged in a general and pervasive policy and pattern and practice of discrimination against African-American students. Defendants' conduct as complained of herein constitutes intentional race discrimination.

3. Plaintiff demands trial by jury on all counts and claims for which a jury is authorized.

## JURISDICTION

4. This Court has jurisdiction pursuant 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction is conferred by 28 U.S.C. § 1367 for Plaintiff's state law causes of action.

5. Venue is proper under 28 U.S.C. § 1391(b) because the unlawful conduct alleged herein was committed and continues to occur within the boundaries of the Northern District of Illinois, Western Division.

## PARTIES

6. Plaintiff ANTONEISHA WALKER ("Antoneisha") is an African American citizen of the United States who resides in Rockton, Illinois. She is a minor.

7. KELLY WILKERSON is the mother of minor plaintiff Antoneisha, and is an African American citizen of the United States who resides in Rockton, Illinois.

8. Defendant HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207 is a local public entity formed and existing under Illinois law. Defendant Hononegah Community

---

[1] On February 19, 2010, Plaintiff filed a timely Complaint of Discrimination with the Department of Education's Office of Civil Rights ("OCR"). On October 20, 2010, Defendant Hononegah Community High School District #207 entered into a settlement agreement with the OCR, outlining certain equitable measures. The OCR's administrative proceedings regarding Plaintiff's Complaint of Discrimination are now closed.

2

High School District #207 runs and operates Hononegah Community High School in Rockton, Illinois, by and through its authorized representatives and employees. Defendant Hononegah Community High School District #207 is responsible for overseeing and supervising all facets of student education; hiring and supervising educators; responding to and investigating complaints of discrimination; and providing, implementing and enforcing Hononegah Community High School District #207 policies.

9. Defendant MAUREEN SCHNAPER, formerly known as Maureen Frese, was at all relevant times a teacher at Hononegah Community High School and an employee of Defendant Hononegah Community High School District #207.

10. Defendant EHREN JARRETT was at all relevant times the principal of Hononegah Community High School and an employee of Defendant Hononegah Community High School District #207. He was charged with responsibilities including, but not limited to, the following: delivery and coordination of student services; hiring, supervision and evaluation of teachers; enforcing discipline as to students and educational personnel; responding to and investigating complaints of discrimination; and interpreting, implementing and enforcing Hononegah Community High School District #207 policies for the students, parents of students, educational personnel and other members of the community.

11. Defendant RANDY GROSS was at all relevant times the superintendent and an employee of Defendant Hononegah Community High School District #207. He was charged with responsibilities including, but not limited to, the following: delivery and coordination of student services; hiring, supervision and evaluation of teachers; enforcing discipline as to students and educational personnel; responding to and investigating complaints of discrimination; and interpreting, implementing and enforcing Hononegah Community High

School District #207 policies for the students, parents of students, educational personnel and other members of the community.

## BACKGROUND

12. Antoneisha is a sophomore at Hononegah Community High School.

13. Antoneisha has never received a suspension. She is on the honor roll.

14. Hononegah Community High School is a predominantly Caucasian school. Approximately 1-2% of the students at Hononegah Community High School are African American.

15. There are no African-American teachers or administrators employed by Hononegah Community High School District #207.

16. For many years, Defendants, on a continuing and ongoing basis, have engaged in a pervasive pattern and practice of discrimination against African-American students by failing to prevent or address incidents of racial harassment and discrimination, failing to implement anti-discrimination policies and failing to adequately train staff concerning these issues.

17. African American students at Hononegah Community High School, including Antoneisha, have, on a continuing and ongoing basis, experienced racially hostile and discriminatory treatment by the school's teachers, other personnel and students.

18. Over the past several years, Defendants Hononegah Community High School District #207, Ehren Jarrett, and Randy Gross have received multiple complaints by African American students and/or their parents about racially hostile and discriminatory treatment by Hononegah Community High School teachers, other personnel and students. Defendants failed to properly address or investigate these complaints.

19. On repeated occasions, African American students have been subjected to the phrase "HonoNoNiggas" by non-African American students at Hononegah Community High School.

20. In August 2009, on the first day of the school year, a student discovered racial graffiti in the boys' bathroom that stated the following: "Fuck Niggers." Although this was reported to school officials and removed, Defendants conducted no additional investigation, and no one was disciplined in connection with the graffiti. Defendants also failed to affirm or reaffirm an anti-discrimination policy in a statement to students and/or parents.

21. In November or December of 2009, Student A, an African-American student at Hononegah Community High School, was told by a male Caucasian student that he was a slave boy and was going to be whipped. The Caucasian student removed his belt. Student A and the other student got into a physical altercation. Student A was suspended for three days. The Caucasian student was not suspended.

22. In late April or early May of 2010, "Fuck Niggers" was again written in the boys' bathroom. A student brought the graffiti to the attention of Hononegah Community High School staff, but the graffiti remained for over a week. Once again, Defendants conducted no investigation, disciplined no one in relation to the graffiti, and failed to affirm or reaffirm an anti-discrimination policy.

23. Defendants Hononegah Community High School District #207, Ehren Jarrett and Randy Gross on a continuing and ongoing basis, have failed to properly address incidents of racial hostility and discrimination and failed to institute and implement appropriate policies, training, and oversight.

24. Defendants Hononegah Community High School District #207, Ehren Jarrett and Randy Gross have failed to properly train and supervise Hononegah Community High School teachers and personnel with regards to discrimination. Defendants also failed to review and guide curriculum and classroom material and conduct with regards to racial appropriateness.

25. Defendants have failed to take reasonable actions to prevent incidents of racial harassment or discrimination.

26. The 2009-2010 Student Parent Handbook describes the Hononegah Community High School District #207 Grievance Procedure. Under the Grievance Procedure, a student or parent (hereinafter the Complainant) should notify a District Complaint Manager if she believes that the School Board, its employees, or agents have violated her rights guaranteed by Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq. The Complaint Manager should assist the Complainant as needed. Within 10 school days of the date the complaint was filed, the Complaint Manager shall file a written report of his or her findings with the Superintendent. Within 5 days after receiving the Complaint Manager's report, the Superintendent shall mail his written decision to the Complainant by U.S. mail, first class, as well as the Complaint Manager.

27. In the handbook, Defendants Gross and Jarrett are the only two listed Complaint Managers.

28. Despite having knowledge of multiple complaints of racial harassment and discrimination, Defendants failed to adequately inform students and parents of the Grievance Procedure. The Grievance Procedure is itself unclear and inadequate. Defendants further failed to properly follow the Grievance Procedure when students and parents complained that their rights guaranteed by Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq, were being violated.

29. The 2009-2010 Student Parent Handbook describes the Hononegah Community High School District #207 demerit system, which is the student discipline system utilized by Defendants. Under the demerit system, "inappropriate actions or comments directed towards any person of a particular race, ethnicity, sex, disability or group" are Level 4 behaviors. Level 4 behaviors require interventions that include one or both of the following: 50 demerits and out-of-school suspension for 5 to 10 days. Notice to parents shall be issued for each occurrence.

30. Defendants failed to follow the discipline system outlined in the handbook when they failed to properly discipline non-African American students who took inappropriate actions or made inappropriate comments directed towards people of a particular race, African American.

31. The 2009-2010 Student Parent Handbook does not address staff-to-student discrimination or a discipline system for staff members who took inappropriate actions or made inappropriate comments directed towards any person of a particular race, ethnicity, sex, disability or group.

32. Staff members who were found by Defendants to have taken inappropriate actions or made inappropriate comments directed towards students of a particular race, ethnicity, sex, disability or group were neither suspended nor terminated for their actions or comments.

33. The 2009-2010 Student Parent Handbook does not include or discuss a specific policy against racial discrimination.

34. The racially motivated unlawful conduct and discriminatory policies and practices complained of herein constitute a pattern of continuous and ongoing conduct.

## DEFENDANTS' CONDUCT TOWARDS THE PLAINTIFF

35. In late November or early December 2009, in Antoneisha's English class, the students were reading *To Kill a Mockingbird*, which is set in the 1930's and concerns racial issues.

36. Antoneisha and one other student, Student B, were the only African-Americans in the class.

37. One in-class exercise was for groups of three students to role-play as (1) plantation owner, (2) slave, and (3) narrator. Antoneisha was placed in a group with two Caucasian males, who assumed the roles of plantation owner and narrator.

38. Because the assignment offended and humiliated Antoneisha, she did not participate. Throughout the exercise, she heard racially insensitive language.

39. During the Fall 2009 semester, Antoneisha was in an Algebra class taught by a Caucasian instructor, Defendant Schnaper.

40. In class, Defendant Schnaper discussed how she previously worked at a school in Chicago where the students were predominantly African American. Defendant Schnaper made comments about how "ghetto" the children were at a school in Chicago at which she previously taught, and how their names were "way off."

41. In class, Defendant Schnaper made jokes about people being black/African-American.

42. Defendant Schnaper also regularly cursed when communicating with students.

43. In the fall of 2009, Antoneisha and another African American student, Student C, sought assistance regarding Algebra from Defendant Schnaper outside of class. Defendant Schnaper treated Antoneisha and Student C in a rude and dismissive fashion.

44. In August of 2009, Defendant Schnaper began to refer to Antoneisha as "Twisha." This is not a name Antoneisha has ever used or been referred to as.

45. Antoneisha told Defendant Schnaper that "Twisha" was not her name and asked why she was calling her that. She understood Defendant Schnaper was calling her "Twisha" because Defendant Schnaper perceived her name to be "ghetto."

46. The other students then began to call Antoneisha "Twisha" in a mocking fashion throughout the school.

47. Defendant Schnaper continued to call Antoneisha "Twisha" after Antoneisha objected to being renamed.

48. On December 2, 2009, Defendant Schnaper wrote an algebra problem on the board during class. Antoneisha had a question about the problem, and raised her hand to indicate she did not yet understand it.

49. Defendant Schnaper stated to Antoneisha and in front of the rest of the class, "You wouldn't. It's a white thing."

50. Defendant Schnaper then wrote another problem on the board and told Antoneisha that she should be able to get that one.

51. Antoneisha asked, "Why, because I am black?"

52. Defendant Schnaper responded, "Yes." The rest of the class laughed.

53. Antoneisha was offended and humiliated by Defendant Schnaper's conduct. Antoneisha has suffered severe social and emotional distress as a result of this racially motivated, inappropriate and humiliating behavior.

54. Later that day, in the hallway, Defendant Schnaper overheard Antoneisha saying she was going to tell her mother what happened, and then claimed, "You know I was just kidding, right?" or something similar.

55. That night, Antoneisha informed her mother, Ms. Wilkerson, about the above-mentioned incident in her Algebra class.

56. The following morning, December 3, 2009, Ms. Wilkerson requested a meeting with Defendant Jarrett in his office to discuss the incident. Ms. Wilkerson informed Defendant Jarrett of what had occurred in Defendant Schnaper's Algebra class. Defendant Jarrett then spoke with Antoneisha and her friend, Student C, about Defendant Schnaper's actions. Defendant Jarrett informed Antoneisha and Ms. Wilkerson that he would look into their allegations, and get back to them.

57. The next day, December 4, 2009, Defendant Jarrett contacted Ms. Wilkerson and told her that her allegations were found to be true and that the school had disciplined Defendant Schnaper. When Ms. Wilkerson requested to know what kind of discipline Defendant Schnaper received, Defendant Jarrett refused to provide a reasonable level of responsive information.

58. Ms. Wilkerson then called Defendant Gross. She informed him about Defendant Schnaper's conduct, Defendant Jarrett's response to it, and the fact that she was not informed about what steps were being taken to ensure that staff-to-student racial hostility and discrimination would not occur again in the future. Defendant Gross said that he would look into it.

59. Later that day, Defendant Gross called Ms. Wilkerson back and said that Defendant Jarrett had already properly addressed Ms. Wilkerson's complaints. This was known

10

by Ms. Wilkerson not to be the case. He also told her that if she was not happy with the resolution, she could take it up with the Hononegah Community School Board.

60. The actions by Plaintiff and Ms. Wilkerson constituted an actionable complaint under the Grievance Procedure, but Defendants did not properly respond.

61. The responses by Defendants Jarrett and Gross, the listed Complaint Managers, to Plaintiff's complaint of racial harassment and discrimination, which Defendant Jarrett had already admitted to be true, deterred further pursuit of Plaintiff's complaint, delayed investigation into the complaint, and created additional unnecessary hurdles for Plaintiff's complaint to be heard.

62. Upon information and belief, Defendant Schnaper was not timely removed from teaching or suspended, is still employed by the District, and is still teaching.

63. On approximately December 7, Antoneisha was removed from the class, which only further stigmatized Antoneisha.

64. No additional investigation, discrimination and harassment training, or district-wide reaffirmation of a non-discrimination policy were initiated or disseminated.

65. On December 10, 2009, Ms. Wilkerson sent an email to Defendant Jarrett, Defendant Gross, and all the members of the Hononegah Community School Board requesting a meeting with the School Board to discuss the racial harassment and discrimination experienced by Antoneisha. On December 13, 2009, attorney David Kurlinkus, Hononegah Community School Board President, responded that Ms. Wilkerson could only raise her concerns at a later, regularly scheduled, meeting or register a formal complaint under the District's Uniform Grievance Policy. This response deterred any further internal complaint or investigation process.

66. Defendants did not address these matters further with Plaintiff or her mother, and failed to investigate further.

## COUNT I
## VIOLATION OF 42 U.S.C. § 2000d (Title VI)
## (Against School District)

67. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

68. At all relevant times, Defendant Hononegah Community High School District #207 was a program or activity that provided public school education and received federal financial assistance, as provided in 42 U.S.C. § 2000d.

69. The aforementioned conduct by Defendant Hononegah Community High School District #207, in concert with the other Defendants, denied Plaintiff the benefit of public education on the basis of race and discriminated against Plaintiff on the basis of race, in violation of 42 U.S.C. § 2000d.

70. Defendant Schnaper, acting within the scope of her official duties, treated the Plaintiff differently on the basis of race in the context of an educational program without a legitimate, non-discriminatory reason. This treatment interfered with and limited the Plaintiff's ability to participate in and benefit from the educational program.

71. Defendants Jarrett and Gross had knowledge of the alleged discrimination and authority to address the alleged discrimination and to institute corrective measures on Defendant Hononegah Community High School District #207's behalf. However, they failed to adequately do so.

72. Furthermore, Defendant Hononegah Community High School District #207 is responsible for creating a racially hostile environment by having knowledge of severe, pervasive

and persistent racially hostile conduct at Hononegah Community High School and failing to adequately address it. This failure interfered with and limited the Plaintiff's ability to participate in and benefit from the educational program.

73. As a result of the aforementioned conduct by Defendant Hononegah Community High School District #207, in concert with the other Defendants, Plaintiff suffered severe emotional distress and educational harm.

74. Plaintiff demands trial by jury as to all questions properly tried to a jury.

## PRAYER FOR RELIEF

With respect to Count I, Plaintiff respectfully requests that this Court:

    a. Enter a declaratory judgment finding that Defendant Hononegah Community High School District #207 has discriminated against the Plaintiff in violation of 42 U.S.C. § 2000d of the Civil Rights Act of 1964;

    b. Grant a permanent injunction enjoining Defendant Hononegah Community High School District #207, its officers, successors, assigns and all persons in active concert or participating with it, from engaging in any conduct which discriminates on the basis of race;

    c. Grant a permanent injunction directing that Hononegah Community High School District #207 take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

    d. Grant Plaintiff a judgment for compensatory damages in an amount sufficient to fully compensate her;

    e. Award Plaintiff individually her attorney's fees and costs incurred in this action; and

    f. Grant such other and further relief as this Court deems appropriate.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983 (Discrimination)
## (Against School District and Individual Defendants)

75. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

76. As described above, acting under the color of state law, Defendants Schnaper, Jarrett and Gross actively, purposefully and intentionally engaged in a course of unlawful race discrimination against Plaintiff in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that they took actions against Plaintiff in violation of clearly established constitutional law forbidding intentional race discrimination.

77. Furthermore, Defendant Hononegah Community High School District #207 had customs, policies and practices in place which inadequately proscribed and prevented instances of racial harassment and discrimination. These customs, policies and practices constituted intentional unlawful race discrimination against Plaintiff in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

78. The aforementioned conduct has resulted in damages to the Plaintiff including, but not limited to, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages.

79. Plaintiff demands trial by jury as to all questions properly tried to a jury.

**PRAYER FOR RELIEF**

With respect to Count II, Plaintiff respectfully request that this Court:

a. Enter a declaratory judgment finding that Defendants have discriminated against Plaintiff in violation of the Fourteenth Amendment to the United States Constitution;

b. Grant permanent injunctive relief ordering Defendants to cease and desist from any of the conduct found by this Court to be discriminatory and in violation of the Fourteenth Amendment;

c. Grant a permanent injunction directing Defendants take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

d. Grant Plaintiff a judgment for compensatory damages in an amount sufficient to fully compensate her, and grant plaintiff a judgment against Defendants for punitive damages;

e. Award Plaintiff her attorneys' fees and costs incurred in this action; and

f. Grant such other and further relief as this Court deems appropriate.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Against Defendant Schnaper)

80. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

81. The aforementioned conduct by Defendant Schnaper was extreme and outrageous.

82. Defendant Schnaper intended to cause or recklessly disregarded the probability of causing Plaintiff emotional distress.

83. Plaintiff in fact experienced severe and extreme emotional distress.

84. Defendant Schnaper's extreme and outrageous conduct actually and proximately caused Plaintiff's emotional distress.

85. Plaintiff demands trial by jury as to all questions properly tried to a jury.

## PRAYER FOR RELIEF

With respect to Count III, Plaintiff respectfully requests that this Court:

15

a. Grant Plaintiff a judgment for compensatory damages in an amount sufficient to fully compensate her, and grant plaintiff a judgment against Defendants for punitive damages;

b. Award Plaintiff individually her attorney's fees and costs incurred in this action; and

c. Grant such other and further relief as this Court deems appropriate.

### COUNT IV
### WILLFUL AND WANTON SUPERVISION
### (Against Defendants School District, Jarrett and Gross)

86. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

87. Defendants Hononegah Community High School District #207, Jarrett and Gross had a duty to supervise their teachers to best insure that Defendant Schnaper and other teachers acted in the best interests of the health, safety and welfare of children attending Hononegah Community High School.

88. Defendants Hononegah Community High School District #207, Jarrett and Gross willfully and wantonly breached their duty to supervise Defendant Schnaper by failing to adequately respond to complaints about her in-class actions and by failing to accurately and properly review Defendant Frese for the purposes of performance evaluation.

89. The willful and wanton behavior of Defendants Hononegah Community High School District #207, Jarrett and Gross proximately caused Plaintiff's injuries, including emotional anguish and distress.

90. Plaintiff demands trial by jury as to all questions properly tried to a jury.

### PRAYER FOR RELIEF

With respect to Count IV, Plaintiff respectfully requests that this Court:

a. Grant Plaintiff a judgment for compensatory damages in an amount sufficient to fully compensate her, and grant plaintiff a judgment against Defendants for punitive damages;

b. Award Plaintiff individually her attorney's fees and costs incurred in this action; and

c. Grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

*/s/ signature*

One of Plaintiff's Attorneys

Dated: November 3, 2010

Jennifer K. Soule
Kelly K. Lambert
Soule, Bradtke & Lambert
155 North Michigan Avenue, Suite 504
Chicago, Illinois 60601
312.616.4422
312.616.4423 (fax)